In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 07-3294

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

BRIAN TOCKES,

*Defendant-Appellant*.

———————

Appeal from the United States District Court
for the Central District of Illinois.
No. 07 CR 10019—**Joe Billy McDade**, *Judge*.

———————

ARGUED FEBRUARY 21, 2008—DECIDED JUNE 27, 2008

———————

Before FLAUM, RIPPLE and ROVNER, *Circuit Judges*.

ROVNER, *Circuit Judge*. Brian Tockes, the owner of a home repair and construction company, pled guilty to two counts of filing a false income tax return, in violation of 26 U.S.C. § 7206(1). The district court determined that the applicable sentencing guideline range was twenty-four to thirty months' imprisonment. The court nonetheless sentenced Tockes to the statutory maximum of thirty-six months' imprisonment on each count, to be served concurrently. Tockes appeals his sentence and we affirm.

**I.**

The Par-A-Dice Riverboat Casino in Peoria bills itself as "The Friendliest Casino on the Water." *See* http://www. paradicecasino.com/site/casino (last visited May 9, 2008). The casino is open daily from 9 a.m. to 6 a.m., meaning it is closed for a mere three hours each day. Par-A-Dice claims to offer a "unique entertainment experience" for both the "pleasure seeker" and the "serious gambler." The casino recognizes that, "for a small segment of our population, gambling is not entertainment," but rather a source of problems. On the casino's website, if one clicks the ironically titled "Responsible Gaming" icon, one may learn the warning signs for irresponsible gaming, including losing time from work due to gambling, repeated failed attempts to stop gambling, lying about the amount of money spent on gambling, and gambling to escape from life's problems. Absent from the list of warning signs is fleecing the elderly clients of your home construction business to support your gambling habit. Tockes heard the siren call of the casino, and apparently was unable to resist.

In the early 1990's, Russell and Mara Lee James hired Tockes to repair their Peoria home. The Jameses were in their mid-seventies at the time, and in the ensuing years, they developed a friendship with Tockes. The couple had no family members living nearby and came to regard Tockes as a nephew. They relied on him for, among other things, transportation to doctors' appointments, shopping, bill paying, and collection of rent on properties they owned. For many years, this relationship was uneventful. In late 1999, when the Jameses were in their eighties, Tockes arranged for them to move into a nursing home. Around the same time, he began gambling

at the Par-A-Dice Casino. He also began fraudulently to bill the Jameses for home repairs. Over the next few years, Tockes managed to transfer ownership of the Jameses' home to his (Tockes') son and son-in-law for a fraction of its worth, helping himself to some of the proceeds. He also charged the Jameses for work he completed on his own house, billed them for repairs to the house they had sold, used their ATM card at the casino to pay for his gambling, and caused them to cash out certificates of deposit and borrow against their life insurance policies in order to cover his mounting gambling losses. Between 1999 and 2003, Tockes swindled the Jameses to the tune of $470,000. Tockes' gambling losses for the years 2000 through 2006 exceeded $450,000.

For the tax years 2000, 2001 and 2002, Tockes failed to report on his federal income tax return the money he obtained by fraud from the Jameses. For the year 2000, Tockes reported income of $74,483 when, in fact, his income was approximately $220,000. For 2001, Tockes reported a total income of $24,997 when the amount was actually closer to $165,946 due to the fraud. For 2002, Tockes reported $64,106 of income when the true total was approximately $95,625. The tax loss to the United States from these three years of under-reporting amounted to $141,495. The loss to the Jameses was, of course, much worse. Tockes was charged with three counts of filing a false income tax return in 2000, 2001 and 2002. He pled guilty to the first two counts and the government moved to dismiss the third count.

By the time of Tockes' sentencing hearing in 2007, Russell James had died and Mara Lee was suffering from dementia. At the hearing, the government presented evidence that law enforcement officers had discovered a

second set of victims, Nancy and Virginia McNear, an eighty-five year old woman and her fifty-six year old daughter. As with the Jameses, the government presented evidence that Tockes overcharged the McNears in connection with work he was supposedly performing on their home. Between May 2004 and mid-2006, Tockes collected $800,000 from the McNears for home improvements. The government alleged that, as part of this scheme, Tockes purchased materials for his work at the McNears' home, substantially inflated the bill, and then returned some of the materials for a refund that he then pocketed. In one instance, he charged the McNears $4000 for $400 worth of materials, and then returned some of the materials for a $200 refund. Tockes thus caused the McNears to pay $4000 for materials worth $200, a twenty-fold mark-up. He also charged them a $5000 fee for an "asbestos removal tax" when there is no such tax in Illinois. Illinois prosecutors charged Tockes with aggravated home repair fraud and theft in connection with his work on the McNears' home.

At the time of his sentencing in the federal income tax offense case, the state charges had not been resolved. In the district court, Tockes objected to the admission of any evidence relating to the state home repair fraud charges for the purposes of sentencing. Specifically, his attorney argued that another lawyer represented Tockes in the state case and he was thus unfamiliar with the charges and unable to adequately respond. He also contended that Tockes would have no way to defend himself against this line of evidence without risking incriminating himself in the state court action, and that evidence of this other, unrelated and unproven offense was not a proper consideration for sentencing. As a result of this

objection, the district court limited the evidence of the state charges to "the charge and the basis for the charge." Tr. at 21.

The government sought a two-point enhancement under sentencing guideline 3B1.3, for abuse of trust, contending that Tockes held a position of trust with the Jameses and abused that trust when he defrauded them. Tockes objected to this enhancement, and the district court accepted his argument that he did not hold with the Jameses a position of trust "characterized by professional or managerial discretion," as required by section 3B1.3. *See* U.S.S.G. §3B1.3, Application Note 1. As a result, the court calculated Tockes' guideline offense level as 17, with a criminal history category of I, resulting in a sentencing range of twenty-four to thirty months. The court then sentenced Tockes to the statutory maximum of thirty-six months' imprisonment on each count, to be served concurrently. After setting the length of the term, the court commented:

> And you know, I'm sure that sounds like a lot of time, but, sir, everyday I send young people, 25, 22, 23 years old to 40, 50 years in prison, 20 years in prison for—they sold sometimes very small quantities of drugs to people and that's very bad and they pay a heck of a penalty for it. So I find it very difficult to give those young men, who admittedly have not been good family people, usually aren't working, aren't supporting their children, and they don't have character letters, but they go away, and I think fairness requires that you go away, too.

Tr. at 52. The sentencing judge also remarked:

> I thought about making these sentences [run] consecutively because that's a possibility too. I could have said

> three years on each county [sic] to run consecutive[ly];
> that would be six years[.]

Tr. at 53. The court ultimately concluded that a sentence of three years, no more, no less, was sufficient to meet the goals of sentencing. Tockes appeals.

**II.**

On appeal, Tockes raises three objections to his sentence and sentencing proceedings. First, he contends that the court erred when it specified that he could receive up to six years' imprisonment. Second, he complains that the court used an improper factor in sentencing him when it considered the lengthy sentences meted out to small-time drug dealers in determining the length of his sentence for tax evasion. Finally, he asserts that the court erred in allowing testimony relating to pending state court charges.

We review all sentences under a deferential abuse of discretion standard. *Gall v. United States*, 128 S. Ct. 586, 591 (2007); *United States v. Sura*, 511 F.3d 654, 664 (7th Cir. 2007). Although the extent of the difference between a particular sentence and the recommended guidelines range is relevant, we afford deference to the district court's judgment whether a sentence is "inside, just outside, or significantly outside" the guidelines range. *Gall*, 128 S. Ct. at 591. Our deferential review is limited to determining whether a given sentence is reasonable. *Gall*, 128 S. Ct. at 594; *Sura*, 511 F.3d at 664. When a district court decides to depart from the guidelines range, it "must give serious consideration to the extent of any departure" from the guidelines and must explain its conclusion "that an unusually lenient or an unusually harsh sentence is

appropriate in a particular case with sufficient justifica-
tions." *Gall*, 128 S. Ct. at 594. The Supreme Court has
rejected an appellate rule that requires extraordinary
circumstances to justify a sentence outside the guide-
lines range, and also has rejected a rigid mathematical
approach that compares the percentage of the departure
with the strength of the justification. *Gall*, 128 S. Ct. at 594-
95. After correctly calculating the guidelines range, the
district court must consider all of the section 3553(a)
factors, making "an individualized assessment based
on the facts presented." *Gall*, 128 S. Ct. at 596-97; *United
States v. Miranda*, 505 F.3d 785, 791 (7th Cir. 2007). The
district court must then adequately explain a particular
sentence to allow for meaningful appellate review. *Gall*,
128 S. Ct. at 597.

Tockes does not contend that the district court cal-
culated the guidelines range incorrectly, and so we
review the sentence for reasonableness. Tockes first
complains that the district court erred in concluding that
the maximum sentence was six, rather than three years.
True, the statutory maximum for each count was three
years' imprisonment, *see* 26 U.S.C. § 7206, but Tockes
was convicted of two counts of filing false tax returns. The
guidelines provide that these two closely related counts
should be grouped together for sentencing purposes,
and typically such sentences run concurrently. *See*
U.S.S.G. § 3D1.2(d). But the guidelines are merely ad-
visory, and as a statutory matter, the court was free to
impose the sentences concurrently or consecutively after
considering the section 3553(a) factors. *See* 18 U.S.C.
§ 3584(b) ("The court, in determining whether the terms
imposed are to be ordered to run concurrently or consecu-
tively, shall consider, as to each offense for which a term of

imprisonment is being imposed, the factors set forth in section 3553(a).") The district court was therefore correct in stating that the maximum sentence for the two counts could go as high as six years if served consecutively.

Tockes also contends that the court improperly compared his tax offense to drug trafficking crimes. He contends that it is "illegal" for the court to conclude that he should serve time in prison because other defendants who committed dissimilar crimes are sometimes sent to prison for lengthy periods of time; he states that Congress did not intend for the courts to use such a consideration as a sentencing factor. In context, it is difficult to see how the court's general comments on this subject, which came after the court announced the sentence, affected the calculation, and Tockes offers no theory to explain how he believes this comparison affected his sentence. Nor does he offer any citation to law in support of his claim of illegality. Unsupported and undeveloped arguments like this are considered waived. *United States v. Warren*, 454 F.3d 752, 764 (7th Cir. 2006). In any case, the court was simply explaining to Tockes that, although his sentence may have seemed harsh to him, the court was accustomed to imposing heavy sentences for seemingly small crimes that caused great social harms. There was nothing improper much less illegal about this comment.

Tockes next asserts that the district court erred when it allowed testimony regarding a pending state court charge. He conceded that the court could appropriately consider the state court indictment in determining his sentence, but he objected to the testimony of an investigator from the office of the State's Attorney in Peoria County concerning the facts underlying the charges. The court

acted well within its discretion in allowing and considering the limited testimony of the state investigator. By statute, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. §3661. Under section 3553(a), the court is required to consider, among other things, the history and characteristics of the defendant. The court may "appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information [it] may consider, or the source from which it might come." *United States v. Vitrano*, 495 F.3d 387, 390 (7th Cir. 2007) (quoting *United States v. Nowicki*, 870 F.2d 405, 406-07 (7th Cir. 1989)). *Cf. United States v. Haskins*, 511 F.3d 688, 695 (7th Cir. 2007) (the court may consider charges that were dismissed but were related to the offense of conviction in setting an appropriate sentence). That information may include reliable evidence of wrongdoing for which the defendant has not been convicted. *Vitrano*, 495 F. 3d at 390. Evidence related to the state fraud charges certainly comes within this purview. The court is also obliged to set a sentence designed to protect the public from further crimes of the defendant, and evidence of recidivism is relevant to that inquiry. There was nothing improper in the consideration of this limited amount of evidence regarding the basis for the state court charge.

We consider lastly whether the sentence is reasonable. Other than the three issues discussed above, Tockes complains only that the sentence is a substantial departure from the guidelines and is not adequately supported by the particular circumstances of his case. The sentence of

thirty-six months exceeded the top of the guidelines range by six months. The Supreme Court finds "it uncontroversial that a major departure should be supported by a more significant justification than a minor one." *Gall*, 128 S. Ct. at 597. To Tockes, this twenty percent increase amounts to a major departure, but the government characterizes the increment as "modest." No matter how the difference is characterized, we afford deference to the district court on the question of reasonableness. *Gall*, 128 S. Ct. at 591. The district court touched on nearly all of the section 3553(a) factors in reaching the sentence. The court recognized that Tockes was different from the typical tax evader. The income he failed to report was derived from defrauding a vulnerable elderly couple at or near the end of their lives, a couple who had grown to trust him and regard him as a family member. Because one of the victims had died and the other was suffering from dementia by the time Tockes' crime came to light, it would have been difficult to prove fraud, and so he was charged instead with tax evasion. The court noted that this was "a break" for Tockes because the guideline range for fraud would have been higher than the range for tax evasion. Moreover, there was evidence that Tockes defrauded another set of victims using a similar scheme, reflecting a need to protect society from further crimes by Tockes. The district judge acknowledged the letters from family and friends attesting to Tockes' character, and noted his lack of criminal history. He commented on the need to deter others from engaging in this conduct, remarking on the abhorrent nature of defrauding elderly and demented persons whose trust Tockes had gained. The court remarked that, although the government lost more than $140,000 in uncollected taxes, the Jameses lost nearly half a million dollars, and the

sentence needed to reflect the magnitude of that loss. In short, the court provided more than adequate support for Tockes' above-guidelines sentence. *See United States v. Dean*, 414 F.3d 725, 729 (7th Cir. 2005) (judges need not expressly address on the record all of the section 3553(a) factors; it is enough to calculate the range accurately, and if the sentence lies outside it, to explain why this defendant deserves more or less); *Vitrano*, 495 F.3d at 391 (all that is needed to sustain an above-guidelines sentence is an adequate statement of the judge's reasons, consistent with section 3553(a), for thinking that the sentence selected is indeed appropriate for the particular defendant). Because we cannot find that such a sentence was unreasonable, the judgment is

AFFIRMED.