# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-1211

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

DAVID L. WESCOTT,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 06 CR 50008—**Frederick J. Kapala,** *Judge*.

ARGUED OCTOBER 31, 2008—DECIDED AUGUST 3, 2009

Before FLAUM, ROVNER and WOOD, *Circuit Judges*.

ROVNER, *Circuit Judge.* A jury convicted David L. Wescott of two counts of unlawful possession of firearms, in violation of 18 U.S.C. § 922(g)(8). Wescott complains that the evidence was insufficient to sustain his conviction, that the court erred in admitting certain evidence, that prosecutorial misconduct prevented him from receiving a fair trial, and that the statute under which he was convicted is unconstitutional. We affirm.

**I.**

In 2004, Glenda Wescott sought an order of protection against her former husband, David Wescott.[1] Wescott received notice of his ex-wife's petition and appeared with counsel at the June 25, 2004 hearing on the petition. R. 103, Gov't Ex. 1. At that hearing, an Illinois state court judge entered an Order of Protection (hereafter "Order") prohibiting Wescott from committing "further acts of abuse or threats of abuse" towards Glenda, and ordering him to stay away from her. The Order was entered on a standardized form and Glenda's attorney filled in the blanks and checked off boxes as the court ruled on the petition. On the first page of the Order, in a section identifying Wescott as the respondent, a box is checked next to the warning: "Caution: Weapon Involved." The Order indicates that Wescott had abused Glenda and would likely continue to abuse her unless the Order was entered. The court granted Glenda exclusive possession of a home the two had shared at 8850 Hales Corner in Stillman Valley, Illinois (hereafter "the Hales Corner house"). The court found that "there is a danger of the illegal use of firearms" and ordered Wescott to turn over "any and all firearms" including any registered to him and any located at 2710 Centerville in Rockford, Illinois, Wescott's residence at that time. The Order specified that Wescott was to turn over the firearms to the Ogle County Sheriff's Office by June 28, 2004, for

---

[1] For the sake of clarity, we will refer to David Wescott as "Wescott" and to Glenda Wescott as "Glenda."

safekeeping. This part of the Order expressly referenced 18 U.S.C. § 922(g), the provision of federal law under which Wescott was eventually charged. The Order was to remain in effect for two years, until June 24, 2006. The face of the Order indicated that Wescott was served with a copy of the Order in open court on June 24, 2004.

On November 29, 2005, just before midnight, a red Chevy Lumina caught the eye of Officer Timothy Stec of the Rockford Police Department as he was patrolling his assigned area. The Lumina was the only other car on the road at that hour, and Officer Stec noticed that the trunk was riding unusually low. He ran the license plate on his squad car computer and determined that the car was registered to Wescott and that Wescott's driver's license had expired in June 2005. The computer also indicated that there was an Order of Protection entered against Wescott that prohibited him from possessing firearms and ammunition. Because the driver of the Lumina matched the description of Wescott given by the computer, Officer Stec decided to pull the car over. In order to avoid passing traffic and because the Order indicated that a weapon was involved, Officer Stec initially approached Wescott's car from the passenger side of the vehicle. Wescott turned over his expired license at the officer's request, and the officer explained that he was issuing a citation for driving on an expired license. Wescott told the officer that he was heading home from work, and was concerned about the cost of the citation. Officer Stec returned to his squad car to complete the traffic citation for driving on an expired license, and then approached the driver's side of the car to give Wescott the ticket.

At that time, the officer noticed that there were several bullets lying loose on the floor of the car. He informed Wescott that the Order prohibited him from possessing firearms or ammunition and asked him if he had those items in the car. Wescott denied that he did. Officer Stec than asked Wescott to step out of the car, and secured him in the back of his squad car. He asked Wescott again whether there were any weapons in the car and Wescott replied that "it was possible." Officer Stec searched the passenger compartment of the car and found 427 bullets, some rolling around loose and some secured in plastic baggies. He then ran a check on Wescott's Firearms Owner Identification card ("FOID card") and learned that Wescott's FOID card had been revoked. He advised Wescott that he was arresting him for possessing ammunition and having a lapsed FOID card. Wescott then told the officer that he was in the process of moving from a house on Bavarian Lane to a house in Stillman Valley that had previously been covered by the Order. He told the officer that he still owned a few rifles, despite the Order. When Wescott again asked about the cost of his bond, Officer Stec told him that, unless he found firearms in the car, the bond would be the same as the original citation. Wescott took a deep breath and told the officer "he was going to need a whole lot more money." R. 86, Tr. at 60.

Subsequent to the arrest, police officers impounded Wescott's car and conducted an inventory search. In the trunk of Wescott's car, the officers found almost enough guns to arm a platoon. Immediately on opening the trunk, the officers saw two new shotguns, still in the original

boxes. Inside two duffel bags, the officers found seventeen pistols and revolvers. A subsequent search of the Hales Corner house resulted in the confiscation of two more rifles and another pistol as well as an astonishing amount of ammunition. The officers who searched the Hales Corner house took photographs of the guns and ammunition that they found there, documenting the location of these items before they were removed.

During an interview with police officers following his arrest, Wescott said he was moving from the Hales Corner house to a house on Bavarian Lane. He told the officers he had not lived at Hales Corner for approximately two years, that he was aware of the Order of Protection, that he knew it was still active and that he had placed the duffle bags in his car trunk a few days before the traffic stop. A detective prepared a written statement for Wescott based on his oral admissions. He asked Wescott to initial before and after each paragraph if he agreed with the contents. Wescott made a few corrections and initialed before and after each paragraph, but balked when he was asked to sign the statement. Instead, he tore the paper in half.

Wescott was charged with two counts of violating 18 U.S.C. § 922(g)(8), one related to the weapons found in the car and one for the weapons found at the Hales Corner house. Section 922(g)(8) declares that it shall be unlawful for any person—

> who is subject to a court order that—(A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity

to participate; (B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and (C)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury; . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(8). A jury found Wescott guilty on both counts and the court sentenced him to thirty-nine months' imprisonment, three years of supervised release and a $7500 fine. Wescott appeals.

## II.

On appeal, Wescott first claims that the evidence was insufficient to convict him on the charged offense because the Order of Protection was not valid and was void on its face. Second, he complains that the court erred in admitting unfairly prejudicial evidence regarding the number of firearms and the amount of ammunition recovered. Third, he maintains that prosecutorial mis-

conduct prevented him from receiving a fair trial. Fourth, he contends that Section 922(g) is an unconstitutional exercise of federal power over a matter traditionally regulated by the states. And finally, he faults the district court for admitting into evidence the torn, initialed, edited and unsigned statement drafted by the detective who interviewed him.

**A.**

The thrust of Wescott's first argument is that he could not have violated Section 922(g)(8) unless there was a "valid" order of protection entered against him. Instead, he claims, he was not "subject to a court order" as required by the statute because the Order here contained inconsistencies and impossibilities and was thus void as a matter of law. As an example of these inconsistencies, Wescott notes that, in the part of the Order dedicated to remedies involving property, boxes indicating the court's findings are checked for every category including (1) "Petitioner, but not Respondent, owns the property"; (2) "The property is jointly owned by the parties, and sharing it would risk abuse or is impracticable and the balance of hardships favors temporary possession by Petitioner"; (3) "Petitioner claims property as marital property, and a proceeding has been filed under the Illinois Marriage and Dissolution of Marriage Act ('IMDMA')." Because it is a legal impossibility for the property to be owned solely by Glenda and also jointly by Wescott and Glenda, Wescott contends that the Order was void. He also complains that the

Order directed him to turn over to the sheriff all of his firearms by June 28, 2004, but also prohibited him from entering the Hales Corner house as of June 25, 2004, the date the Order was entered. It was thus impossible for him to turn over any guns that were at the Hales Corner house at that time. Finally, he protests that the Order was amended on November 17, 2005, to allow him to enter the Hales Corner house to remove his personal property and to prepare the property for sale, but the amendment made no mention of any firearms on the premises.

We cannot see the relevance of Wescott's complaint about the amendment to the Order. Nothing in the amendment affected the original Order's prohibition on possession of firearms, and the original Order remained in effect until its termination date of June 24, 2006. Indeed, the attorney who represented Wescott at the state court hearing on the Order testified at the federal trial that the prohibition on possession of firearms and ammunition remained in effect following the amendment. R. 87, Tr. at 301-02. The remaining arguments amount to an attempt to collaterally attack the validity of the state court Order. Wescott does not cite a single case in support of this argument. He does not argue that the Order or the process leading to its issuance failed to comport with any of the requirements set forth in Section 922(g)(8). For example, he does not contest that the Order was issued after a hearing, of which he had actual notice, and at which he had an opportunity to participate. Rather he argues that he was not "subject to a court order" because the Order was void *ab initio* due to internal

contradictions. Although our circuit has not yet directly addressed whether a defendant may collaterally attack the validity of the order of protection underlying a Section 922(g)(8) violation, every court to consider the issue has rejected Wescott's argument.[2] *See United States v. Young*, 458 F.3d 998, 1005 (9th Cir. 2006) (declining to entertain a collateral inquiry into the constitutionality of the state court restraining order proceedings in a Section 922(g)(8) case except to the extent that the federal statute explicitly requires certain procedural protections); *United States v. Hicks*, 389 F.3d 514, 534-35 (5th Cir. 2004) (refusing to consider in a Section 922(g)(8) case a collateral attack on a protective order issued by a state court, where the defendant argued that the order was void *ab initio* because the state court lacked subject matter jurisdiction over the application for the order); *United States v. Emerson*, 270 F.3d 203, 264 (5th Cir. 2001) (holding that the court in a Section 922(g)(8) prosecution may not engage in collateral review of the validity of the underlying state court order, at least where that order is not so "transparently invalid" as to have "only a frivolous pretense to validity"); *United States v. Baker*, 197 F.3d 211, 216-17 (6th Cir. 1999) (holding that the nature of the underlying state proceeding has no effect on the constitutionality of a Section 922(g)(8) prosecution, and

---

[2] The Ninth Circuit assumes that we answered this question in *United States v. Wilson*, 159 F.3d 280 (7th Cir. 1998), but, as we explain below, we have not taken a conclusive position on the issue until today. *See United States v. Young*, 458 F.3d 998, 1004 n.14 (9th Cir. 2006).

that no matter how a defendant became subject to a domestic violence protective order, the defendant must comply with Section 922(g)(8)). *See also United States v. Calor*, 340 F.3d 428, 430 (6th Cir. 2003) (rejecting defendant's claim that the court order upon which his prosecution under Section 922(g)(8) was based was not issued after a hearing that is within the scope of Section 922(g)(8), and finding that the minimum requirements for a hearing set forth in Section 922(g)(8) comport with the requirements of due process).

The Supreme Court considered a similar issue in *Lewis v. United States*, 445 U.S. 55 (1980). In 1977, Lewis was charged with knowingly receiving and possessing a firearm after having been convicted of a felony in a state court, in violation of 18 U.S.C. § 1202(a)(1). The underlying state court felony was a 1961 conviction for breaking and entering. Lewis was not represented by counsel at the 1961 trial and had not waived his right to counsel. He contended in his federal prosecution that, under *Gideon v. Wainwright*, 372 U.S. 335 (1963), a violation of Section 1202 could not be predicated on a prior conviction obtained in violation of his Sixth and Fourteenth Amendment rights. *Lewis*, 445 U.S. at 56-57. The Court looked to the language of Section 1202 and determined that there was no modifier or limitation on the scope of the term "convicted." Instead, the language of Section 1202 was sweeping, and the fact of a felony conviction therefore imposed a firearm disability until the conviction was vacated or the felon was relieved of the disability by some affirmative action, such as a pardon. Turning to the legislative history, the Court saw "nothing

to suggest that Congress was willing to allow a defendant to question the validity of his prior conviction as a defense to a charge under § 1202(a)(1)." *Lewis*, 445 U.S. at 62. The Court noted that a convicted felon must challenge the validity of a prior conviction, or otherwise remove the firearms disability, *before* obtaining a firearm. *Lewis*, 445 U.S. at 67. The Court therefore held that a firearms prosecution under § 1202(a)(1) "does not open the predicate conviction to a new form of collateral attack." *Lewis*, 445 U.S. at 67.

We applied the holding of *Lewis* to prosecutions under Section 922(g)(1), the current statute prohibiting possession of firearms by felons. *See United States v. Wallace*, 280 F.3d 781 (7th Cir. 2002). After Wallace pled guilty to violating Section 922(g)(1) but before he was sentenced, the Illinois Supreme Court vacated his underlying Illinois felony conviction that had served as the predicate for the Section 922(g)(1) charge. Wallace moved to dismiss the case and the district court denied the motion. On appeal, we noted that, under *Lewis*, "an offense may be predicated upon a prior state court felony conviction, even though the predicate conviction is subject to collateral attack." *Wallace*, 280 F.3d at 784 n.1. Thus, "the only relevant question is the defendant's status at the time he was charged with unlawfully possessing the firearm." *Id*. Wallace possessed the firearm while the state court conviction was still valid, and thus violated Section 922(g)(1) even though the predicate felony was later vacated.

Similarly, in *United States v. Lee*, 72 F.3d 55 (7th Cir. 1995), a defendant sought to overturn his conviction under

Section 922(g)(1) because his predicate state court conviction had been expunged after his arrest for firearm possession but before his trial. The expungement voided Lee's conviction *ab initio*, and Lee thus argued that he was not a felon when he possessed a firearm and certainly was not a felon by the time his trial was held. We found that, because Lee's conviction had not been expunged at the time he possessed the firearm, the evidence was sufficient to demonstrate that Lee was a convicted felon at the relevant time. We therefore affirmed the conviction. *Lee*, 72 F.3d at 58.

We see no reason to treat Section 922(g)(8) differently from Section 922(g)(1). True, Section 922(g)(1) requires only a that a person has been "convicted in any court of, a crime punishable by imprisonment for a term exceeding one year," and Section 922(g)(8) contains a number of procedural requirements that must have been met in the court issuing the predicate order. The procedural protections available to defendants in criminal actions are not necessarily present in a civil proceeding that results in the issuance of a protective order, and that difference is reflected in the additional protections required in Section 922(g)(8). But Wescott does not claim that the government failed in proving that those procedural safeguards were met here. The Order was in fact issued after a hearing. Wescott received actual notice of that hearing at which he had the opportunity to participate. He does not dispute that the Order contained the findings required under subsections 922(g)(8)(B) and (C). Any internal inconsistencies in the Order are irrelevant to the fact of the Order, just as any constitu-

tional infirmities in a predicate felony conviction are irrelevant to the fact of the conviction in a Section 922(g)(1) case. So long as the Order was in effect, Wescott could not lawfully possess firearms or ammunition. We join our sister circuits in so holding.

The Ninth Circuit reads our opinion in *United States v. Wilson*, 159 F.3d 280 (7th Cir. 1998), as implicitly concluding that the state court hearing at which the order of protection is issued must comport with the requirements of the Due Process Clause. *United States v. Young*, 458 F.3d 998, 1004 n.14 (9th Cir. 2006). The *Young* court rejected what it characterized as our "view that the defendant could challenge the constitutionality of the state court proceedings in federal court" because that view is in tension with the Supreme Court's holding in *Lewis*. In *Wilson* as in the present case, the defendant was convicted of violating Section 922(g)(8). After the government presented its evidence at trial, Wilson moved for a judgment of acquittal, arguing that the state court hearing at which the order of protection was issued did not comport with due process. The district court denied the motion and we affirmed. We noted that, under *Matthews v. Eldridge*, 424 U.S. 319 (1976), "some form of hearing is required before an individual is finally deprived of a property interest." *Wilson*, 159 F.3d at 289 (quoting *Matthews*, 424 U.S. at 323). We also remarked that, to meet the requirements of due process, a hearing must afford an opportunity to be heard at a meaningful time and in a meaningful manner. We proceeded to analyze whether Wilson had notice of the hearing, whether the hearing was held at a meaningful time, and

whether Wilson had an opportunity to participate in a meaningful manner, finding ultimately that the hearing comported with the requirements of due process. *Wilson*, 159 F.3d at 290. However, we did not address, and were not asked to address, whether Wilson could challenge the constitutionality of the hearing that resulted in the order of protection. The issue was simply not presented. Contrary to the Ninth Circuit's interpretation of *Wilson*, there is no circuit split, and we have never held that a defendant in a Section 922(g)(8) case may wage a collateral challenge to the predicate state court hearing. All of the courts to consider the issue, as we noted above, have determined a defendant may not collaterally attack the predicate protective order, and we now adopt that rule.

Wescott belatedly argues in his reply brief that the government presented insufficient evidence that he was "subject to" a "court order." He contends that the jury concluded that Government Exhibit 1 (to which we have been referring as the "Order") was a court order to which he was subject simply from the face of the document. The document alone, he maintains, is not sufficient for a jury to conclude that the "defective instrument" was in fact a court order or that he was subject to it. He suggests that one way for the government to prove its case was to call as a witness the state court judge who signed the Order. Wescott also muses that, under the government's proposed method of proof, a person might be "subject to" a blank order form, or an incomplete form or even a blank piece of paper. Arguments raised for the first time in a reply brief are waived. *Porco*

*v. Trustees of Indiana University*, 453 F.3d 390, 395 (7th Cir. 2006). Even if we were to consider these arguments, any claim that the Order was not a "court order" or that Wescott was not "subject to" the Order would be frivolous. The government authenticated and entered into evidence a certified copy of the Order through Glenda's attorney, who had filled in the blanks on the Order as the state court judge ruled. The attorney who represented Wescott at the state court hearing also testified. He confirmed that the Order required Wescott to turn over to the sheriff's office any and all firearms, and that the firearms provision of the Order remained in effect after the Order was modified to allow Wescott to enter the Hales Corner house. R. 87, Tr. at 303-04. We reject any challenge to the sufficiency of this evidence. *See United States v. Groves*, 470 F.3d 311, 323-24 (7th Cir. 2006) (holding that we will overturn a jury verdict for insufficiency of the evidence only if, after viewing the evidence in the light most favorable to the government, the record is devoid of evidence from which a reasonable jury could find guilt beyond a reasonable doubt).

**B.**

We dispense with Wescott's other arguments in short order because all are baseless. He complains that the district court should not have allowed the government to introduce into evidence the amount of firearms and ammunition that were seized from his home and car. We review evidentiary decisions for abuse of discretion. *United States v. Millbrook*, 553 F.3d 1057, 1062 (7th Cir. 2009).

Wescott apparently thought it was sufficient to allow evidence of only one firearm and protested that evidence of the remaining firearms was unduly prejudicial. The court limited the government to introducing evidence only of the firearms charged in the indictment. Wescott would not stipulate to possession of the firearms, and so the government, in order to meet its burden of proof, presented evidence regarding each of the twenty-two firearms listed in the indictment. This was not, as Wescott characterizes it, propensity evidence but was direct evidence of the crime itself and there was nothing improper about its admission. The district court also found that the presence in the house of ammunition that fit the guns was relevant to Wescott's knowing possession of the guns. Because there was an eye-popping, jaw-dropping amount of ammunition found in the house (the district court judge was not, unfortunately, exaggerating when he said during a sidebar that there was a "ton and a half" of ammunition found at the house) the court limited the government's evidence to the presence and type of ammunition found there. As part of this evidence, the government introduced certain photographs taken at the house before the ammunition and firearms were removed. Although the pictures were prejudicial, they were not unfairly so. The most alarming pictures were never shown to the jury, and the government confined its argument about the ammunition to the proper purpose of demonstrating Wescott's knowing possession of the firearms. The court did not abuse its discretion in allowing a limited amount of evidence regarding the ammunition for a proper purpose.

Wescott next contends that prosecutorial misconduct prevented him from having a fair trial. As an example of prosecutorial misconduct, Wescott again cites the introduction of evidence regarding ammunition, which we have already found was properly admitted. He also protests that the government improperly introduced witnesses who testified that some of the firearms originated outside the United States. This evidence, he says, "clearly was an attempt to play on fears of overseas terrorism." He also complains about Officer Stec's testimony that he first approached Wescott's car from the passenger side, contending that the prosecutor elicited this testimony in order to convey to the jury that Wescott is a dangerous man. In reviewing a claim of prosecutorial misconduct, we consider first whether the challenged remark by the prosecutor was improper, and second, whether it prejudiced the defendant. *United States v. Corley*, 519 F.3d 716, 727 (7th Cir. 2008). Wescott cannot get past the first part of this test. The prosecutor made no references to "overseas terrorism." Any nefarious connection between foreign manufacture of firearms and "overseas terrorism" exists only in Wescott's mind. The argument is frivolous. The government was obliged to show that the guns had been "shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(8). *See also United States v. Lee*, 502 F.3d 691, 700 (7th Cir. 2007) (evidence that a firearm was manufactured in Spain was sufficient to demonstrate movement in interstate commerce as required by 18 U.S.C. § 922(g)(1)). Evidence that some of the guns had been manufactured outside the United States was an appropriate way to prove that

element of the crime. As for the testimony about Officer Stec's approach to the vehicle, there was nothing improper about the prosecutor's question or the officer's answer. None of Wescott's claims of prosecutorial misconduct have merit.

We also reject Wescott's argument that Section 922(g)(8) is an unconstitutional exercise of federal power under *United States v. Lopez*, 514 U.S. 549 (1995). In fact, we have already rejected this argument multiple times. *See United States v. Wilson*, 159 F.3d at 285-87 (distinguishing *Lopez* because, unlike the former Section 922(q), Section 922(g) contains a jurisdictional element which establishes the requisite nexus with interstate commerce); *United States v. Lee*, 72 F.3d 55, 58-59 (7th Cir. 1995) (noting that Section 922(g) survives a constitutional challenge under *Lopez*); *United States v. Bell*, 70 F.3d 495, 497-98 (7th Cir. 1995) (holding that Section 922(g)(1) is immune from constitutional attack under *Lopez* because it explicitly requires that a nexus to interstate commerce be established). Wescott offers no good reason to reassess our prior holdings and we decline to do so.

Finally, we turn to the admissibility of the torn statement. After receiving *Miranda* warnings and waiving his right to remain silent, Wescott made a number of incriminating statements to the police officers who interviewed him. One of those officers prepared a written version of Wescott's oral statements and asked Wescott to review it, edit it as he wished, and sign it. Wescott reviewed the statement and initialed the beginning and end of each paragraph, editing parts of the statement. In

the end, he refused to sign the statement and instead tore it in half. The government sought to admit the document as a confession and to suggest to the jury that Wescott's action in tearing the paper demonstrated consciousness of guilt. Wescott sought to exclude the use of the document entirely as irrelevant and as a violation of his right against self-incrimination. Again Wescott did not cite a single case in support of his argument. He does not contest the government's claim that he received appropriate *Miranda* warnings and waived his right to remain silent. He makes no argument that he was coerced into making the statement or initialing the paragraphs. It is difficult to discern from his cursory argument the nature of the error he is claiming. "Unsupported and undeveloped arguments like this are considered waived." *United States v. Tockes*, 530 F.3d 628, 633 (7th Cir. 2008); *United States v. Warren*, 454 F.3d 752, 764 (7th Cir. 2006). We see no obvious error in the district court's decision to admit this evidence, and we decline to consider the issue further.

AFFIRMED.