**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 10, 2014
Decided July 15, 2014

**Before**

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 13-1368

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 1:11-cr-00027-WCG-1 |
| CHARLES W. ADAMS, *Defendant-Appellant.* | William C. Griesbach, *Chief Judge.* |

**O R D E R**

Charles Adams pleaded guilty to failing to register as a convicted sex offender, 18 U.S.C. § 2250(a). The district court imposed the statutory maximum sentence of 120 months' imprisonment, a term that is more than double the high end of Adams's guidelines range of 46 to 57 months. On appeal Adams contends that his above-guidelines sentence is substantively unreasonable. Because the court sufficiently explained the variance between the sentence imposed and Adams's guidelines range, we affirm the judgment of the district court.

Adams, as a convicted sex offender, is required to register in any jurisdiction where he lives or works. He had last updated his residency in June 2010, when he told officials that he had moved from Allen County, Indiana, to Owen County, Indiana. He later notified Owen

County three times between July and September 2010 that he was working out of state. Yet Adams did not notify the county that he began working in Menasha, Wisconsin, in October of that year, nor did he notify officials in Wisconsin that he was working in the state, as he was required to do.

Federal authorities discovered Adams's unregistered status after he had been accused of sexually assaulting a woman in Neenah, Wisconsin. The woman reported to the police that she worked as an escort and agreed to meet Adams at a hotel. After she refused to engage in anal sex, she said, Adams tied her up, stuffed a pillowcase in her mouth, and sodomized her. He was charged with second degree sexual assault and false imprisonment, and he was in state custody when he was charged with the current federal offense.

The presentence report revealed Adams's extensive criminal history, including several violent sexual offenses (although many of those crimes were too old to score any criminal history points). In 1986 when Adams was 19, he tied up, gagged, and raped a 12-year-old girl. He received a 10-year sentence with 8 of that suspended. And after serving 1 year he was released on probation. His probation was revoked less than two years later, however, after he was convicted of criminal confinement for tying up a woman and handcuffing her to a bed. While Adams was incarcerated for that offense, he attempted to escape, and he received an additional 6-1/2 years' imprisonment. A year after he was released, in 1998, Adams was convicted of criminal trespass after he caused a disturbance at his wife's job by yelling at her, the owner, and a customer, and refusing to leave. He received a 365-day suspended sentence. A few months later his wife reported that, after she had refused to have sex one night, he bound, gagged, and forcibly penetrated her. During the rape, she said, Adams poured whiskey over her nose, mouth, and face while she gagged, and then he struck her with the bottle. A jury returned guilty verdicts for the crimes of battery with a deadly weapon, criminal deviant conduct, and criminal confinement, and in 1999 he received a total of 16 years' imprisonment. He was paroled in 2006, and the sentences were discharged in March 2009. Less than two years later he was arrested for the assault in Wisconsin, leading to the case that is now before us.

Adams objected to the presentence report, opposing a proposed 6-level upward adjustment for committing a sex offense on an adult while not in registered status, *see* U.S.S.G. § 2A3.5(b)(1)(A). This increase rested on the pending charge in state court. Adams explained that he had pleaded not guilty to those charges, maintained that all the acts between him and the escort were consensual, and argued that the case boiled down to his word against the victim's.

In response, the government submitted the transcript of the victim's testimony at Adams's preliminary hearing in Wisconsin circuit court and called one of the investigating officers to testify at the sentencing hearing. At the preliminary hearing the victim identified Adams at her

assailant. She agreed that initially they had consensual intercourse. But then Adams wanted to switch to anal intercourse, and when she refused and began dressing to leave, he told her that she wasn't going anywhere. She screamed, and Adams pushed her onto the bed and put her in a headlock until she couldn't breathe. Then he used pillow cases and the belt from her jacket to tie her arms and legs. He then shoved his fingers in her anus and put his penis in her mouth. At sentencing, Sergeant Christine Walsh of the Neenah Police Department testified that the victim's testimony at the preliminary hearing was consistent with the statement she had given the police and with what she said during her 911 call reporting the assault. Walsh added that the investigation revealed that Adams had solicited two prisoners to pay the victim $5,000 to change her story and another $5,000 if she did not testify at his trial.

The district court found by a preponderance of evidence that Adams had committed a sex act while not registered and added 6 levels to his base offense level of 16, *see* U.S.S.G. § 2A3.5(a)(1), (b)(1)(A). With a 3-level decrease for accepting responsibility, *see* U.S.S.G. § 3E1.1, the court calculated a total offense level of 19 and criminal history category of IV, yielding a guidelines imprisonment range of 46 to 57 months. Adams advocated for a within-guidelines sentence, and the government requested a 57-month sentence.

The district judge pointed out that he was authorized to impose up to 10 years' imprisonment and offered this assessment:

> If ten years is ever appropriate, it seems to me it is in this case. I look at the history here, I look at this defendant, I look at the failure to register aggravated by the commission of a sexual assault while unregistered, and I conclude that a sentence of 120 months in the custody of the Bureau of Prisons is appropriate, and that's the sentence I impose.

The judge explained that normally he puts great weight on the parties' recommendations, but this time, he thought, a guidelines sentence would be unreasonable. Adams's pending case in Wisconsin was an aggravating factor in this offense, the court reasoned, because the purpose of registration is "to allow the public to know who you're dealing with," and Adams, by not registering, had "successfully avoided" detection by the escort. The court added that Adams's criminal history had begun at age 19 and involved serious offenses. Adams, the court concluded, is "a very dangerous person … who at best is disturbed" but more likely just has no regard "for others, particularly for women."

Adams limits his appeal to challenging the substantive reasonableness of his above-guidelines sentence. Because the district court heavily relied on Adams's criminal history as a factor for imposing a sentence above the guidelines range, Adams contends, the judge should have referenced U.S.S.G. § 4A1.3—a policy statement that provides guidance for variances if

the defendant's criminal history is inadequately represented—to determine the extent of the variance. If the district court had done so—by incrementally moving across the sentencing table—the court would have had to move up to a total offense level of 24 and criminal history category of VI to obtain a 120-month sentence, *see* U.S.S.G. § 4A1.3(a)(4). Adams also contends that the district court erred by considering the pending Wisconsin charges because the court already had accounted for the state case by tacking on 6 offense levels during the guidelines calculations.

"We will uphold an above-guidelines sentence so long as the district court offered an adequate statement of its reasons, consistent with 18 U.S.C. § 3553(a), for imposing such a sentence." *United States v. Hallahan,* 744 F.3d 497, 518 (7th Cir. 2014) (internal quotation marks and citation omitted); *see United States v. Molton,* 743 F.3d 479, 484 (7th Cir. 2014); *United States v. Stinefast,* 724 F.3d 925, 932 (7th Cir. 2013). "[A] major departure should be supported by a more significant justification than a minor one." *Gall v. United States,* 552 U.S. 38, 50 (2007); *see United States v. Taylor,* 701 F.3d 1166, 1174 (7th Cir. 2012); *United States v. Castillo,* 695 F.3d 672, 673–74 (7th Cir. 2012). And we are more likely to uphold an above-guidelines sentence "if it is based on factors sufficiently particularized to the individual circumstances of the case rather than factors common to offenders with like crimes." *United States v. Jackson,* 547 F.3d 786, 792–93 (7th Cir. 2008) (internal quotation marks and citation omitted).

District judges need not belabor the obvious, *see United States v. Lyons,* 733 F.3d 777, 785 (7th Cir. 2013), and the record leaves no doubt about why the district court imposed the statutory maximum sentence. At sentencing the court recounted—in detail—Adams's ongoing, violent criminal history and concluded that a 10-year sentence is reasonable for such a dangerous person. If that weren't enough, as the government points out, the court did not rest Adams's above-guidelines sentence entirely on his criminal history but imposed a sentence consistent with the factors in 18 U.S.C. § 3553(a). The court also considered the nature and circumstances of the current offense, including that Adams violently assaulted another woman, who easily could have avoided him had Adams been registered, the characteristics of the defendant, particularly Adams's violent propensities toward women, the need to deter Adams from committing more crimes, and to protect the public from him. *See* 18 U.S.C. § 3553(a)(1), (a)(2)(B), (C); *United States v. Drain,* 740 F.3d 426, 432–33 (7th Cir. 2014) (concluding that district court could rely on defendant's long arrest record plus adjudicated criminal history without following § 4A1.3 in its "holistic evaluation" of § 3553(a) factors and affirming above-guidelines sentence); *United States v. Perez-Molina,* 627 F.3d 1049, 1049–51 (7th Cir. 2010) (concluding that district court did not err in disregarding § 4A1.3 because it also relied on other § 3553(a) factors in imposing sentence that doubled high end of guidelines range).

Nor was there any error in the court's consideration of the pending Wisconsin charges during the § 3553(a) analysis because a sentencing court may further consider facts already

taken into account during the guidelines calculations. *See United States v. Aljabari,* 626 F.3d 940, 951 (7th Cir. 2010); *United States v. Tockes,* 530 F.3d 628, 633 (7th Cir. 2008) (recognizing district court's discretion to consider pending state charge in determining sentence).

We are even less persuaded by Adams's remaining arguments that his above-guidelines sentence implicates broader policy goals in the criminal justice system: marginal deterrence and incentives to plead guilty. He first argues that, by imposing the statutory maximum sentence, the district court risks leaving "no room for deterrence of more serious crimes" because his sentence is similar to the median sentences for crimes like sexual abuse of a minor, transportation of a minor for sex, sexual abuse of a ward, and criminal sexual abuse. Second, Adams argues that his above-guidelines sentence "serves as a beacon, warning other defendants that the entry of a guilty plea will earn them short shrift and removing incentive for similarly situated defendants to enter a plea of guilty." But as far as these arguments relate to the reasonableness of Adams's sentence, neither shows that "the district court's reasoning was illogical or inconsistent with the factors listed in § 3553(a)," *United States v. Boling,* 648 F.3d 474, 483 (7th Cir. 2011), and thus there is no basis to conclude that the district court abused its discretion on those grounds.

**AFFIRMED**.