In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-2680

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

IKEITZ GAREY,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 01 CR 108—**David F. Hamilton**, *Judge.*

ARGUED DECEMBER 5, 2002—DECIDED MAY 15, 2003

Before BAUER, DIANE P. WOOD, and WILLIAMS, *Circuit Judges.*

BAUER, *Circuit Judge.* Defendant-Appellant Ikeitz Garey, who pleaded guilty to illegally possessing a firearm, challenges the district court's denial of his motion to suppress evidence of weapons seized from his residence in violation of the Fourth Amendment. Because we agree with the district court's conclusion that police seized the weapons from Garey's residence in good-faith reliance upon a validly issued search warrant, we affirm the district court's ruling.

**BACKGROUND**

During the course of an arson investigation in November 1998, law enforcement agents in Indianapolis interrogated Patrick Henry, who reeked of gasoline at the time of his detention near the crime scene. Initially denying any involvement, Henry eventually admitted to throwing two Molotov cocktails into the firebombed building. According to Henry, he was living in the garage of an individual whom he knew only as "Keith" or "Batch" when Batch and another individual woke him and drove him, at gunpoint, to a building which they then forced him to firebomb under cover—or coercion—of gunshots. Henry described to investigators the house adjacent to the garage where he had been sleeping on Carrollton Avenue as "the one that's at, I hope that's the right address, that 1617, it's a white double. One side is boarded up, the other side is not. . . . It's, matter of fact it's on the east end side of the street, there's a parking lot next to it, I mean an empty lot next to it."

Following Henry's interrogation, Detective Michael L. Mack of the Indiana Police Department prepared a probable cause affidavit stating, inter alia, that Henry had informed police that a man whom Henry knew as "Batch," and with whom Henry was then living in a residence located "at 1615 North Carrollton Avenue and as described in the attached Search Warrant," coerced Henry at gunpoint to throw the Molotov cocktails.[1] On the basis of

---

[1] Mack appears to have determined that Henry, despite his uncertainty as to the address number, was in fact describing the residence at 1615, rather than 1617, North Carrollton Avenue, and included the correct address in his affidavit. Although Garey contends that the discrepancy—insofar as it calls Henry's credibility into question—betrays the objective unreason-

(continued...)

Mack's affidavit, Marion County Superior Court Judge Gary Miller found probable cause and issued a search warrant which, by its terms, incorporated Mack's affidavit.[2] The search warrant authorized police to enter

> the north half of a two story double family residence with white siding and a stone and brick front porch. The resiodence [sic] has two doors on the west side, two doors on the east side and one door on the north side. The south half of the duplex is vacant and boarded. There is also a white cinder block, one car detached garage at the rear east side of the residence. There is a partial numbered address affixed to the front of the residence. The first and third numbers are "1", and [sic] the second and fourth numbers are missing. The residence is directly south of the duplex to the north, which bares [sic] the address of 1617/1619 N. Carrollton.

The search warrant further authorized police to search for

> any materials that may have been used to make Molotov cocktails, specifically gasoline and "Big Bear" brand, 40 ounce beer bottles as alleged by the confidential source as the type that were utilized in a recent arson/ firebombing . . . . Further, several firearms that were utilized by the subjects during the commission of this arson/firebombing, to include [sic] an AK-47

---

[1] (...continued)
ableness of the police officer's belief that probable cause existed to search the residence, we regard it as trivial in light of Henry's thorough physical description of the house and the fact that the house was missing several numbers.

[2] It appears that Mack also prepared the search warrant which, along with the affidavit, Judge Miller read prior to issuing the search warrant.

type assault rifle, and blue steel and chrome-plated semi-automatic handguns[,] are believed to be within this residence.

Though Judge Miller signed the search warrant, no signed copy of the affidavit was found on file with the Marion County court clerk.[3]

Approximately twenty-four hours after detaining Henry, officers executing the search warrant encountered Joseph Wooten and Defendant-Appellant Ikeitz Garey sleeping inside the residence at 1615 North Carrollton. In addition to an assault rifle, a Molotov cocktail, and "miscellaneous drugs" seized from the house, police recovered two handguns from the bed in which Garey slept.

In September 2001, Garey was indicted on two counts of possession of an unregistered firearm and two counts

---

[3] With respect to his issuance of the search warrant, Judge Miller would eventually testify before the district court as follows:

| | |
|---|---|
| Prosecution: | Sir, on the day that this search warrant was signed are you sure that you read the affidavit for probable cause? |
| Miller: | Oh, I'm quite certain. |
| Prosecution: | And, sir, can you tell the Court did you intend to sign the search warrant? |
| Miller: | Yes. |
| Prosecution: | And did you intend to provide to Detective Mack a valid search warrant for the residence that is indicated in the State's Exhibit Number Two? |
| Miller: | Yes. |
| Prosecution: | Did you find probable cause for the search warrant that day? |
| Miller: | Yes. |

of firearm possession by a felon.[4] Garey then filed—and the district court denied—a motion to suppress evidence seized from 1615 North Carrollton, asserting that the search violated his Fourth Amendment rights insofar as the police lacked probable cause, the search warrant notwithstanding. Without making any determination as to probable cause, the district court concluded that the search and seizure fell within the scope of the good-faith exception to the exclusionary rule as articulated in *United States v. Leon*, 468 U.S. 897 (1984). Reserving his right to appeal the district court's ruling on his motion to suppress, Garey entered a conditional plea of guilty to one count of firearm possession by a felon, in violation of 18 U.S.C. § 922(g) (2003), and was sentenced to 84 months' imprisonment and three years of supervised release.

Garey now appeals the district court's denial of his motion to suppress evidence seized from the residence at 1615 North Carrollton Avenue.

## ANALYSIS

In *Leon*, the United States Supreme Court established an exception to the Fourth Amendment exclusionary rule—which remedies Fourth Amendment violations through the exclusion from the prosecution's case-in-chief of evidence obtained as a result thereof—in cases where law enforcement officers have acted in objectively reasonable reliance on a search warrant issued by a neutral and detached magistrate. 468 U.S. at 927 (BLACKMUN, J.,

---

[4] State arson charges were dismissed after the state court granted Garey's motion to suppress evidence seized from 1615 North Carrollton Avenue. Garey subsequently pleaded guilty to *federal* arson charges and was sentenced to 60 months' imprisonment, but his conviction was vacated after the district court awarded him post-conviction relief pursuant to 28 U.S.C. § 2255.

concurring in judgment). Writing for a majority of the Court, Justice White reasoned that the suppression of evidence obtained through magistrate error inadequately served to deter law enforcement agents from overstepping the bounds of the Fourth Amendment. *Id.* at 921 (observing that "penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations"). Because the exception is premised on the officer's good-faith reliance on the search warrant, its application is limited in several respects, including the following:

> Suppression . . . remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth. *Franks v. Delaware*, 438 U.S. 154, 171 (1978) . . . . Nor would an officer manifest objective good faith in relying on a warrant based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Brown v. Illinois*, 422 U.S. 590, 610-611 (1975) (POWELL, J., concurring in part); *see Illinois v. Gates*, 462 U.S. 213, 263-264 (1983) (WHITE, J., concurring in judgment).

*Id.* at 923.

As a matter of course, application of the good-faith exception assumes that the warrant issued in (spite of) the absence of probable cause. In the instant case, it appears that the district court made precisely this assumption in its statement that it "need not and does not decide whether the search warrant was actually supported by probable cause." *United States v. Garey*, No. IP 01-108-CR-1 H/F at 12 (S.D. Ind. Apr. 11, 2002) (entry on defendant's motion to suppress) (citing *United States v. Fairchild*, 940 F.2d 261, 264 (7th Cir. 1991) (assum-

ing without deciding that affidavit failed to establish probable cause, but holding that good-faith exception applied)). Deferring to the district court's election to confine its analysis to the issue of the good-faith exception to the exclusionary rule, *cf. United States v. Arch*, 7 F.3d 1300, 1302 (7th Cir. 1993), we review its application thereof for clear error, *see United States v. Spry*, 190 F.3d 829, 834 (7th Cir. 1999) (citation omitted).

In support of his challenge to the district court's application of the good-faith exception, Garey contends that (i) Detective Mack's omission from the affidavit of several facts surrounding Henry's statement misled Judge Miller and (ii) the affidavit supporting the search warrant was "so deficient on the issue of probable cause that no reasonably minded police officer could have relied upon it in good faith." We address each of these arguments in turn.

First, Garey infers that Mack intended to deceive Judge Miller from the affidavit's omission of the following information relating to Henry's statement to police: (i) the inconsistency between Henry's initial denial and eventual admission of his involvement in the arson; (ii) Henry's admitted drug use; (iii) Henry's uncertainty as to the exact address number of the North Carrollton Avenue residence; (iv) that Henry did not directly observe gasoline or "Big Bear" brand beer bottles *inside* the North Carrollton Avenue residence; and (v) that investigators informed Henry that only by cooperating with police could he avoid a lengthy prison term. However, under *Leon*, these omissions alone form an insufficient basis upon which to conclude that Mack misled Judge Miller and that suppression is thus appropriate. Garey bypasses the requisite analytical step of demonstrating that the affidavit contained information that Mack "knew was false or would have known was false except for his reckless disregard of the truth," *Leon*, 468 U.S. at 923 (citation omitted). On the contrary, all of the information included

in the affidavit was the product of Henry's statement, rather than Mack's fabrication. Neither Garey's argument nor the record provides this Court with any indication whatsoever that Detective Mack intentionally or recklessly deceived Judge Miller.[5]

Secondly, Garey asserts that no reasonable police officer could have concluded from the facts contained in the affidavit that probable cause existed to search 1615 North Carrollton Avenue, since it lacked any reference either to the instrumentality of the crime or to the nexus between the crime scene and 1615 North Carrollton Avenue. Although the district court considered and properly rejected both of these points, we briefly address them here.

With respect to the issue of the affidavit's silence on the instrumentality of the crime, we note not only that the affidavit explicitly mentioned "two Molotov cocktails," but also that the search warrant (which, by its terms, incorporated the affidavit) was *more specific* than the affidavit; it referred to such items—specifically described in Henry's statement—as "'Big Bear' brand, 40 ounce beer bottles" and "an AK-47 assault type rifle."[6] As the government

---

[5] Moreover, any doubt as to Henry's credibility implicit in various of these omitted facts—to the extent that we entertain Garey's speculation that such doubt would have defeated Judge Miller's probable cause finding—is overcome by Mack's inclusion in the affidavit of statements Henry made against his penal interest. *See, e.g.*, *United States v. Leidner*, 99 F.3d 1423, 1429-30 (7th Cir. 1996) (approving magistrate's consideration of informant as reliable due to statements made against penal interest); *United States v. Barnes*, 909 F.2d 1059, 1069 (7th Cir. 1990) (fact that informant's statement was made against penal interest added to credibility).

[6] Henry's statement describes both of these items as instrumentalities of the crime: the beer bottle was used to make a

(continued...)

correctly observes, "while this is poor draftsmanship, it does not mean the affidavit was so lacking in probable cause that no reasonable law enforcement officer could have relied on the warrant."

Nor does Garey's claim that the affidavit lacked any nexus between the arson scene and the Carrollton Avenue residence support the argument that no reasonable officer could have concluded that probable cause existed to search his residence. The district court's statement of the law is correct: "A search warrant may issue even in the absence of direct evidence linking criminal objects to a particular site" taking into account the totality of the circumstances. *United States v. Garey*, No. 01-CR-108, p.13 (S.D. Ind. 2002) (citing *United States v. Sleet*, 54 F.3d 303, 306 (7th Cir. 1995) (upholding search warrant for home of bank robbery suspect; under totality of circumstances, reasonable to find evidence there)). What police knew is thus more germane to our assessment of the reasonableness of an officer's probable cause belief than what the affidavit did not make explicit. Police knew that Henry, whom witnesses had observed smelling of gasoline while fleeing the scene of an arson fire and gunshots, claimed to have been living at 1615 North Carrollton Avenue with an individual who coerced him, at gunpoint, to throw two Molotov cocktails at the crime scene. Even assuming, arguendo, that this information forms an inadequate basis for a magistrate's *legal finding* of probable cause, it certainly establishes a nexus between the crime scene and the place to be searched sufficient to support a police officer's *reasonable belief* that probable cause exists.

---

[6] (...continued)
Molotov cocktail and the rifle was fired at the crime scene (whether as covering fire or to coerce Henry).

In short, neither Garey's motion to suppress nor this appeal makes the requisite showing "that the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause," *Leon*, 468 U.S. at 926, and, as such, the good-faith exception to the exclusionary rule applies to the evidence seized from 1615 North Carrollton Avenue.

## CONCLUSION

The district court properly applied the good-faith exception to the exclusionary rule in denying Defendant-Appellant's motion to suppress evidence seized from his residence pursuant to a valid search warrant. AFFIRMED.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*