# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 03-1104

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

LAWRENCE STEVENS,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Central District of Illinois.
No. 02 CR 20037—**Michael P. McCusky**, *Judge.*

———————

ARGUED FEBRUARY 25, 2004—DECIDED AUGUST 19, 2004

———————

Before CUDAHY, ROVNER, and WILLIAMS, *Circuit Judges.*

ROVNER, *Circuit Judge.* Lawrence Stevens was charged in a three-count indictment with possession with intent to distribute five or more grams of crack, 21 U.S.C. § 841(a)(1) (Count 1), possession of a firearm by a felon, 18 U.S.C. § 922(g)(1) (Count 2), and possession of a firearm during and in relation to a drug trafficking crime, *id.* § 924(c) (Count 3). A jury found Stevens guilty on all three counts, and he was sentenced to concurrent 327-month terms of imprisonment on Counts 1 and 2 and a consecutive sentence of life imprisonment on Count 3. Stevens has appealed, and we affirm.

## Background

On April 3, 2002, police in Decatur, Illinois, found the body of Alban Woods outside of town. The police learned that the previous night Woods had called a friend and told her that he was following "Shadow" (a nickname Stevens used) to the home of Shadow's sister and then that he would return to Decatur. Woods also told his friend that he recently had purchased a dark blue Buick Roadmaster. The police did not find the car when they recovered Woods's body but five days later observed a dark blue Buick Roadmaster parked in front of Stevens's house at 1338 Wood Street in Decatur. A detective detailed all of this information in an affidavit given to a state court judge, who in turn issued a warrant allowing the police to search Stevens's home for evidence of Woods's murder. Decatur police executed the search warrant and found Stevens inside the house with his girlfriend and her mother. In Stevens's bedroom officers found 47.4 grams of crack in a dresser drawer, including a 16.6-gram chunk and 82 individual rocks packaged in separate bags. In the same drawer officers found a dozen 9mm bullets. Tucked between the mattress and box spring of the bed, the police found a loaded 9mm semi-automatic pistol with a round in the chamber, and under the bed officers found a shotgun and the pistol's case, which contained a fully loaded magazine. The officers also found a postage scale with apparent crack residue on it and two plastic bags containing over $15,000 in currency. The police did not find, however, any evidence linking Stevens to Woods's murder.

Stevens agreed to speak with the police and signed a waiver of his rights. He admitted that the crack and the guns were his but said that he was holding the money for someone else. Stevens even showed police where he had hidden additional money above the ceiling tiles of the bedroom. Stevens's girlfriend also made a statement to the police and confirmed that the crack and guns were Stevens's and that she knew he was selling drugs.

After the federal drug trafficking indictment was returned, Stevens moved to suppress the evidence seized during the search of his home on the ground that the affidavit supporting the warrant did not establish probable cause. The district court disagreed and denied Stevens's motion. The district court went on to hold that, even if the warrant was not based on probable cause, the good-faith exception to the exclusionary rule would apply because the officers who conducted the search reasonably relied on the warrant.

Meanwhile, the police had forwarded the postage scale to the Illinois State Police crime laboratory, and forensic experts confirmed the presence of crack residue and also found two fingerprints that matched Stevens's. Forensic scientist John Carnes completed his report concerning the fingerprint evidence on July 29, 2002—10 days before trial—and immediately forwarded it to the government. That same day the government disclosed the report to Stevens and notified him that Carnes would be called as an expert witness at trial.

On the first day of trial, Stevens moved in limine to exclude the testimony of Carnes, alleging that the government violated Federal Rule of Criminal Procedure 16 when it disclosed the expert report just one week before trial. The district court denied Stevens's motion because the government had disclosed the report on the same day it was received. After denying his motion, the court asked Stevens whether he wanted any other relief other than exclusion of the evidence, and Stevens said that he did not.

On the second day of trial, the court held a jury instruction conference at which the government submitted a proposed instruction based on this circuit's pattern jury instruction 4.03. The government's submission informed the jurors that they could not convict on Counts 2 or 3 unless they unanimously agreed that Stevens possessed a particular firearm. Stevens conceded at the time that the proposed instruction

was appropriate, and so the district court agreed to give it. Later, after the parties had rested, Stevens stated that he had no proposed instructions of his own to tender to the court. Subsequently though, just before the jury was to receive the final charge, Stevens reversed course and told the court that he had a "problem" with the unanimity instruction because he thought it was confusing. Stevens orally proposed two additional instructions that he thought would avoid the perceived confusion, but he did not have them in writing to submit to the court. Stevens acknowledged that the government's instruction was a correct statement of the law, so the court denied his request. In closing arguments, both the government and counsel for Stevens reminded jurors that they were required to unanimously agree that Stevens possessed at least one of the guns before they could find him guilty on Counts 2 or 3. The jury returned guilty verdicts on all three counts.

## Discussion

Stevens first argues that the district court erred in finding that the underlying affidavit contained sufficient facts to establish probable cause for the search of Stevens's home. However, in his opening brief Stevens failed to attack the court's alternative holding that the evidence seized was admissible under the good-faith exception to the exclusionary rule articulated in *United States v. Leon*, **468** U.S. **897** (1984). In his reply brief, Stevens attempts to argue that the good-faith exception should not apply, but the challenge is brought too late and we will not consider his arguments. *See United States v. Alvarez-Martinez*, **286** F.3d 470, 475 (7th Cir. 2002) (arguments raised for the first time in a reply brief are waived).

Nevertheless, if we were to examine the district court's decision, we would agree that the evidence was admissible

under the good-faith exception. Under *Leon*, the exclusionary rule will not bar evidence obtained pursuant to a search warrant unless the magistrate who issued the warrant abandoned his neutral and detached role in issuing it, or unless "the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Leon*, 468 U.S. at 926.

There has never been any suggestion in this case that the magistrate abandoned his neutral role in issuing the warrant or that the officers were dishonest or reckless in preparing the supporting affidavit, so the only question is whether the affidavit was so lacking in facts that the officers could not reasonably have believed that probable cause existed. The affidavit stated that police had learned that just hours before his death, Woods told a friend that he was driving a newly purchased Buick Roadmaster and was following "Shadow" to his sister's house and then would return to Decatur. The affidavit also contained a statement from a confidential informant whose description of "Shadow" matched that of Stevens. The affidavit also stated that a recently purchased Buick Roadmaster was seen parked on the street in front of Stevens's residence. Although it is debatable whether the affidavit contained sufficient facts to establish probable cause, it is not so devoid of facts that a reasonable officer could not have believed probable cause existed. *See United States v. Garey*, 329 F.3d 573, 578 (7th Cir. 2003); *United States v. Koerth*, 312 F.3d 862, 869-70 (7th Cir. 2002). Accordingly, although Stevens does not challenge the district court's decision that the good-faith exception applies, we see no error in the court's conclusion.

Second, Stevens argues that the district court failed to comply with Federal Rule of Criminal Procedure 16 when it denied his motion to exclude the testimony of the government's fingerprint expert, John Carnes, because the government did not disclose the substance of his testimony

until ten days before trial. Even though the government turned over Carnes's report as soon as it was produced, Stevens argues that the government had possession of the scale for three months and should have conducted the fingerprint analysis in a more timely manner. Stevens contends that he was prejudiced by the government's late disclosure because he did not have time to obtain an independent fingerprint expert to verify the accuracy of Carnes's opinion.

We review the district court's denial of Stevens's motion to exclude for abuse of discretion. *United States v. Duvall*, 272 F.3d 825, 828 (7th Cir. 2001). Rule 16 requires the government to provide, at the defendant's request, a copy of any scientific tests or reports *in the government's possession* and a written summary of any expert testimony it intends to use during its case-in-chief. Fed. R. Crim. P. 16(a)(1)(F).

We agree with the district court that the government did not violate Rule 16 because it turned over the expert report as soon as it learned the report existed. In fact, the government could not have produced the report any sooner because it received the report the day it was produced. Nevertheless, even if the government had violated Rule 16, the appropriate remedy was not necessarily exclusion of the evidence. Subsection (d)(2) of Rule 16 provides for several different remedies the district court "may" adopt in response to discovery violations, including granting requests for continuances. The type of sanction is "left to the discretion of the court," *United States v. Jackson*, 51 F.3d 646, 652 (7th Cir. 1995) (citations omitted), "and we will reverse only for abuse of discretion prejudicial to the substantial rights of the defendant," *United States v. Koopmans*, 757 F.2d 901, 906 (7th Cir. 1985). "A defendant is prejudiced under Rule 16 only when he is unduly surprised and lacks an adequate opportunity to prepare a defense, or when the violation substantially influences the jury." *United States v. De La Rosa*, 196 F.3d 712, 716 (7th Cir. 1999).

Although Stevens argues on appeal that he did not have time to obtain an independent fingerprint expert to verify the accuracy of the government's witness, he did not request a continuance or any other alternative remedy even when the trial court asked him if he wanted any other relief other than exclusion of the evidence. Furthermore, Stevens was not prejudiced because his counsel was able to thoroughly cross-examine Carnes at trial. *See United States v. Navarro*, 90 F.3d 1245, 1259 (7th Cir. 1996). Given the wide discretion we afford the district court in fashioning a proper remedy for a Rule 16 violation and Stevens's failure to show that he was prejudiced, we affirm the district court's ruling.

Next, Stevens argues that the district court erred in rejecting his demand for a unanimity instruction concerning which firearm he possessed. Stevens contends that the court's instruction might have confused the jury and resulted in his conviction on Counts 2 and 3 without all the jurors agreeing on which firearm he possessed. Stevens acknowledges that he did not submit in writing a proposed instruction on point.

Where, as here, a defendant fails to tender a proposed instruction, we review the district court's ruling for plain error. *United States v. Mutuc*, 349 F.3d 930, 935 (7th Cir. 2003). Only if we find that a miscarriage of justice has occurred will we remand. *See Johnson v. United States*, 520 U.S. 461, 470 (1997); *United States v. Hoover*, 246 F.3d 1054, 1058 (7th Cir. 2001). Stevens admitted at trial that the unanimity instruction was a correct statement of the law. Furthermore, any confusion in the jury instructions was countered by the explicit instructions given by both Stevens and the government during closing argument that it could find Stevens guilty of Counts 2 and 3 only if they unanimously agreed on whether he possessed the pistol or the shotgun. Thus, we find that the district court did not commit plain error.

Stevens's final argument is that the government did not prove beyond a reasonable doubt that he "possessed" a firearm in violation of § 924(c)(1)(A). Stevens contends that the government failed to show that the guns were related to the drugs and not in the bedroom for the purpose of self-defense, as Stevens argued at trial.

We consider the evidence in the light most favorable to the government and will overturn a conviction only if no rational trier of fact could conclude that the government proved the crime's essential elements beyond a reasonable doubt. *United States v. Young*, 316 F.3d 649, 660 (7th Cir. 2002). Under § 924(c)(1)(A), "any person who, during and in relation to any . . . drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, sues or carries a firearm, or who, in furtherance of any such crime, possesses a firearm," is subject to various terms of imprisonment. A conviction under § 924(c)(1) is inappropriate if "the firearm's presence is coincidental or entirely unrelated to the crime." *Smith v. United States*, 508 U.S. 223, 238 (1993); *see United States v. Stott*, 245 F.3d 890, 906 (7th Cir. 2001). However, if the drugs and gun are found in the same place it is "nearly an inescapable conclusion" that they satisfy the "in relation to" prong of § 924(c)(1). *United States v. Jackson*, 300 F.3d 740, 747 (7th Cir. 2002) (citing *United States v. Molina*, 102 F.3d 928, 932 (7th Cir. 1996)).

We believe the government met its burden of proof in Stevens's case. At trial, the jury heard testimony that both the pistol and the shotgun were found in the same bedroom with the drugs and drug paraphernalia, the guns were easily accessible (the pistol was tucked between the mattress and box spring and the shotgun was under the bed), the pistol was loaded and had a round chambered, and extra bullets for the pistol were found in the same drawer as the 82 individually packaged bags of crack. Given the testimony elicited at trial, the jury reasonably could have concluded that Stevens possessed a gun in relation to a drug trafficking offense.

Accordingly, we AFFIRM Stevens's convictions in all respects.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*