In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-2226

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

VERNON THORNTON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 09 CR 92—**Barbara B. Crabb,** *Judge.*

ARGUED NOVEMBER 1, 2010—DECIDED JUNE 16, 2011

Before ROVNER, WOOD and TINDER, *Circuit Judges.*

ROVNER, *Circuit Judge.* A jury convicted Vernon Thornton of possessing ammunition after having been previously convicted of a felony in violation of 18 U.S.C. § 922(g)(1), attempting to possess with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846, and possessing with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1). The district court sentenced Thornton to twenty-one months of imprisonment on each count, to run concurrently. Thornton appeals his convictions and we affirm.

**I.**

On February 26, 2009, several agents of the Dane County Narcotics and Gang Task Force executed a search warrant on a package that had been flagged by FedEx as suspicious. The agents examined the package and determined that it contained marijuana. The packaging itself was very distinct. The marijuana had been encased in layers of plastic wrap with a colored fluid between some of the layers. That assembly was surrounded by foam packing chips. Lining the inside of the box were linoleum floor tiles. After resealing the package, the agents delivered it to the address listed. Although it was addressed to "Joanne Anderson," a woman named Kim Carrillo took delivery of the package, and the agents then sought her cooperation. She told the agents that she had agreed to accept the parcel for a friend named Staci Amato in exchange for $100. Carrillo claimed not to know what the package contained, and she showed the agents where Amato lived.

Amato had asked her long-time friend to accept the package because she had previously received two other boxes of marijuana at her home and did not wish to draw further attention to herself. Amato knew the three packages contained marijuana and she had agreed to accept them in exchange for cash. After receiving shipments, Amato had twice before delivered marijuana to a man she knew by the name of "Black." Amato vividly recalled the first delivery, shortly before Christmas of 2008, because she was unemployed and needed the money. Delivering marijuana made her nervous and she

wrapped the parcel like a Christmas present to avoid suspicion. The supplier had offered her a pound of marijuana as payment, but she preferred cash and so Black sold the pound for her and gave her $350 in cash. Amato received a similar package in February 2009, approximately one week before her arrest. As she had done before, she delivered the package to Black. On each occasion, Black paid her for the marijuana and she then wired the money to a person in Texas. Several days after delivering the first package, Black paid her $9,000. For the second package, he paid her between $2,000 and $3,000. She also received payment for taking delivery of the marijuana and passing it along to Black.

At least some of the marijuana in the third package was intended for Black. On February 26, 2009, the agents arrested Amato as she was on her way to Carrillo's apartment to pick up the package. Amato agreed to cooperate with the agents and set up a meeting with Black to deliver the latest shipment to him. Black did not want the entire package and he requested that Amato deliver only two pounds to him. The package contained more than nine pounds of marijuana. After making a series of phone calls to Black monitored by the drug task force agents, Amato and the agents proceeded to the agreed-upon meeting place, a nearby Dollar Tree store. Other agents went to Black's home and followed him to the Dollar Tree store. When Black arrived and pulled up along-side Amato's car, they arrested him. In court, Amato identified Thornton as the man she knew as "Black."

Thornton was driving a pickup truck at the time of his arrest. From the bed of the pickup truck, the agents recovered a second box which also contained foam packing chips and what appeared to be marijuana residue. The agents noted that, like the box Amato was delivering that day, the box in the truck bed was lined with linoleum tiles. Thornton agreed to talk to the agents and the conversation was recorded. Excerpts were later played for the jury. Thornton admitted in that conversation that he had more marijuana and also ammunition in his home.[1] The agents then executed a search warrant at Thornton's home where they recovered a duffle bag containing ten separate packages of marijuana weighing between 12.24 grams and 38.01 grams, for a total of approximately eight and a half ounces. They found a digital scale near the packets of marijuana. They also recovered three different calibers of ammunition.

Thornton was charged with being a felon in possession of ammunition, possessing with intent to distribute

---

[1] In support of this fact, the government cites a page of trial transcript where the court allowed excerpts of the audio recording of Thornton's post-arrest meeting with the agents to be played. The trial transcript does not contain the content of the recorded conversation, and neither the recording nor the transcript of the recording appear in the record on appeal. The defendant does not contest the government's portrayal of the recorded conversation and so we will accept the facts as given by the government in this instance. The government is admonished to include in the record in the future all relevant evidence and exhibits on which it intends to rely in the appeal.

the marijuana found in his home, and attempting to possess with intent to distribute the marijuana that Amato was trying to deliver to him on the day of his arrest. A magistrate judge handled all pre-trial proceedings. When Thornton's lawyer filed a motion for disclosure of any experts the government intended to present at trial, the magistrate granted the motion but set no deadline for the disclosure. *See* Fed. R. Crim. P. 16(a)(1)(G). Approximately ten days before the start of the trial, the prosecutor, who had overlooked the court's disclosure order, sent the *curriculum vitae* ("CV") of its drug expert to defense counsel, along with a note stating that she was providing the CV even though defense counsel had not requested expert witness disclosures. She also provided copies of expert reports from the government's drug expert, and from the firearms expert who was to testify about the ammunition found in Thornton's home. The prosecutor was incorrect, of course, as she candidly admitted in the district court, in the government's brief on appeal, and during oral argument. The defense had in fact requested expert disclosures and the court had ordered them provided, but defense counsel chose not to correct the prosecutor's misimpression. He believed (correctly) that it was not his duty to remind the government of its obligations under the court's orders. By the day the trial was scheduled to begin, defense counsel had seen the reports from the drug and firearms experts and the CV of one of the experts. The magistrate conducted jury selection proceedings and the trial began the next day in the district court.

At the start of trial, Thornton moved to exclude all of the government's expert witnesses. Defense counsel argued that even in the case of the government's drug expert, David Hannon, whose CV and report were provided before the trial, the CV and report were too thin to establish the witness's expertise. The court offered to delay the trial so that the government could provide adequate disclosures of any law enforcement officers it intended to present as experts. The government decided to forego presenting any experts other than Hannon and ATF Agent William Baudhuin. Baudhuin's report had already been provided and the government provided his CV to defense counsel on the morning of trial. The court allowed a long lunch break for the defense to review the materials, and also allowed defense counsel to conduct *voir dire* of Baudhuin during his testimony. The court overruled Thornton's objections to the adequacy of the materials presented by the government, and asked defense counsel to submit in writing the case law on which he was relying for the proposition that the CVs or reports were inadequate. Defense counsel did not submit anything in writing but continued to make oral objections which the court overruled.

Hannon testified that the substances found in Thornton's home and in the package that Amato was delivering were in fact marijuana. Hannon described for the jury the various tests that were performed to make that determination. He also testified regarding the weight of the marijuana found at Thornton's home and the weight of the marijuana in the package Amato was delivering to Thornton on the day of his arrest. Baudhuin

then testified that the ammunition found in Thornton's home was manufactured outside the state of Wisconsin. He based this testimony on the markings on the boxes of ammunition as well as on the ammunition itself, personal experience with ammunition, and catalogs produced by the manufacturers and maintained by the ATF. Thornton objected to Baudhuin's testimony in part because it relied on documents that could be considered hearsay. The court overruled the objection. The government presented other law enforcement officers as fact witnesses only, and also presented the testimony of Carrillo and Amato. During cross-examination of Amato, defense counsel sought to question Amato about the extent of her involvement in selling marijuana to persons other than Thornton. The court sustained the government's objections to this line of questioning as irrelevant to the charges. The jury convicted Thornton on all three counts and the court sentenced him to three concurrent terms of twenty-one months' imprisonment. Thornton appeals.

## II.

On appeal, Thornton contends that the court abused its discretion when it limited his cross-examination of Staci Amato. He maintains that the court erred in allowing the testimony of Hannon and Baudhuin as experts because their CVs and reports were too thin to qualify them as experts. He also argues that the court erred in allowing the expert testimony of ATF Agent Baudhuin because the court failed to apply the *Daubert*

framework to his testimony and allowed him to rely on hearsay documents that were created for the purposes of prosecution rather than for scientific study. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

## A.

Thornton's counsel wished to question Amato about her full involvement with a drug conspiracy based in Texas, the supplier of the marijuana in this case. He sought to demonstrate that Thornton was not Amato's only buyer of marijuana, that only a portion of the third shipment was intended for Thornton, and that Amato was much more involved in the conspiracy than the government was portraying her to be. Thornton also wished to show that Amato had a motive to lie about how much marijuana she delivered to him. The main issue on the drug counts, Thornton contends, was whether he intended to distribute the marijuana or whether he simply possessed personal use amounts. Amato was allowed to testify that this was her third delivery to Thornton in a relatively short period of time. The amount of money that exchanged hands was indicative of sub-stantial amounts of marijuana in each delivery. Thornton wished to show that Amato was motivated to lie about making multiple, large deliveries to Thornton in order to protect her larger customers who were actually engaged in the distribution of marijuana.

The government objected to these questions based on relevance. Thornton, the government contended, was not charged with conspiracy; he was charged only with

attempt to possess with intent to distribute two pounds of marijuana, and with possession with intent to distribute the marijuana in his home. On the monitored calls with Amato, Thornton was heard asking for "two books," a term that Amato explained meant two pounds of marijuana. The government never claimed that the entire third package was destined for Thornton, only that he had requested two pounds of the latest shipment. The court ruled that Amato's relative culpability as well as her other sales or deliveries were irrelevant to the charges against Thornton and refused to allow defense counsel to pursue the topic on cross-examination of Amato.

We review the court's decision to admit or exclude evidence for abuse of discretion. *United States v. Boone*, 628 F.3d 927, 932 (7th Cir. 2010); *United States v. Cooper*, 591 F.3d 582, 590 (7th Cir.), *cert. denied*, 130 S. Ct. 3530 (2010); *United States v. Wescott*, 576 F.3d 347, 355 (7th Cir. 2009), *cert. denied*, 130 S. Ct. 1546 (2010). We will reverse and order a new trial only if any evidentiary errors are not harmless. *Boone*, 628 F.3d at 932; *Cooper*, 591 F.3d at 590; Fed. R. Crim. P. 52(a). Thornton argues on appeal that the evidence was relevant to demonstrate that Amato lied about her level of involvement with the conspiracy and, as previously noted, fingered Thornton as a major buyer in order to protect her other customers. Thornton contends that he purchased only personal use quantities of marijuana, and Amato's testimony made it appear that he had purchased distribution level quantities on three occasions during a three-month period.

Although we understand Thornton's reason on appeal for wishing to explore Amato's full involvement in

the drug distribution conspiracy, at trial, Thornton's ex-
planation in defense of this line of questioning was con-
siderably more murky. On appeal, counsel makes clear
that Thornton wished to demonstrate that Amato
had a motive to lie about the size and frequency of her
deliveries to Thornton in order to protect customers
who were truly purchasing distribution level quantities
of marijuana from her. But at trial, Thornton simply
argued that this line of questioning was relevant to
Amato's general credibility. Thornton also argued at
trial that he wanted to demonstrate that the idea that the
entire third package was destined for him was a fallacy.
Finally, he wanted to establish that Amato was not an
"innocent duped woman" but rather was a drug-dealing
middle man, "knee deep" in the conspiracy and a much
more culpable player than Thornton. R. 18-2, Tr. at 55-56.
At trial, defense counsel never told the court that he
wanted to show that Amato was lying about the size and
frequency of deliveries to Thornton in order to protect
others who were larger purchasers. He did not tell
the court that he was attempting to demonstrate that
Thornton purchased only user level quantities and that
Amato lied about selling him more. His explanation in
support of this line of questioning instead appeared
limited to the third package.

The court was correct that the government had already
conceded that only two of the nine pounds in the
package were destined for Thornton. Thus the govern-
ment had already conceded the point that Thornton
claimed he wished to make with his cross-examination.
The jury was well aware that not all of the marijuana

was destined for Thornton and could easily infer that Amato must have had other ways to dispose of the additional seven pounds. Thus the evidence already demonstrated the points Thornton wished to establish. Without Thornton providing a clearer explanation of the relevance of that line of questioning, we cannot say that the district court abused its discretion in limiting Amato's cross-examination.

Had Thornton explained that he was also attacking Amato's credibility on the other two deliveries, then his proposed questioning of Amato regarding other customers or the scope of her involvement in the conspiracy may well have been relevant. But even if the court had abused its discretion in limiting this cross-examination, any error would have been harmless. In determining whether an evidentiary error is harmless, we consider whether, in the mind of the average juror, the prosecution's case would have been significantly less persuasive had the improper evidence been excluded. *Cooper*, 591 F.3d at 590; *United States v. Emerson*, 501 F.3d 804, 813 (7th Cir. 2007); *United States v. Owens*, 424 F.3d 649, 656 (7th Cir. 2005); *United States v. Eskridge*, 164 F.3d 1042, 1044 (7th Cir. 1998). The prosecution's case for Thornton's intent to distribute was quite strong. With at least one of the other two packages, there was strong physical evidence that Thornton had taken delivery of another box of marijuana from Amato: the oddly lined box that was found in the bed of Thornton's truck was very similar to the box Amato was seeking to deliver to him on the day of his arrest. In light of that second box, the two pounds that Thornton wanted

from the third package, and the individually packaged eight and a half ounces found at his home next to a scale, his defense of personal use was dubious at best. Any error in limiting the cross-examination thus would have been harmless.

On appeal, Thornton also claims that the court's limitations on his cross-examination of Amato violated his Confrontation Clause rights. He did not, however, raise his Confrontation Clause concerns in the district court and so we review this forfeited argument for plain error. *United States v. James*, 464 F.3d 699, 709 (7th Cir. 2006), *cert. denied*, 129 S. Ct. 2035 (2009); *United States v. Stephenson*, 557 F.3d 449 (7th Cir. 2009). Before we will reverse for plain error based on an argument not made at trial, we must find (1) that there is error, (2) that it is plain, and (3) that it affects substantial rights. *James*, 464 F.3d at 709. "Once these three conditions have been met, we may exercise our discretion to correct the error if it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *James*, 464 F.3d at 709. The defendant bears the burden of establishing that the error affected substantial rights by demonstrating that the outcome probably would have been different without the error. *Id*. We have already determined that the court's decision to exclude this line of questioning was not an abuse of discretion and likely would have been harmless even if Thornton had made clear the nature of his claim of relevance. Without a cogent explanation to the district court regarding the true relevance of this evidence to his defense that he possessed only personal use amounts of marijuana,

the district court did not err in barring the line of questioning. And given that the exclusion of this line of questioning was harmless, Thornton falls far short of the standard for plain error in any case. The court therefore did not err in limiting the cross-examination of Amato.

**B.**

We next consider whether the court erred in allowing the expert testimony of the drug expert David Hannon and ATF Agent Baudhuin. Thornton continues to argue that the CVs and reports that the government provided for these witnesses were inadequate. Thornton also contends that the court failed to apply the *Daubert* framework to Agent Baudhuin's testimony and allowed him to rely on hearsay documents that were created for the purposes of prosecution rather than for scientific study. According to Thornton, Baudhuin's reliance on documents maintained by the ATF for the purposes of prosecution violated *Daubert* and prevented him from conducting an adequate cross-examination. Thornton frames this claim as a violation of the Confrontation Clause.

We note first that, after the district court overruled Thornton's oral objections to the adequacy of the government's Rule 16(a)(1)(G) submissions, the district judge directed Thornton to "write out the case law" on which he was basing his objection so that she could review it. R. 18-2, Tr. at 66-67. Thornton did not respond to the district court's request. He now contends that the court erred by simply overruling his objections to the

Rule 16 materials without assessing under *Daubert* whether Hannon or Baudhuin qualified as experts. Thornton did not include the allegedly objectionable Rule 16 materials in the record on appeal. And his argument on appeal is undeveloped as was the objection he made in the district court. Undeveloped and unsupported arguments may be deemed waived. *Wescott*, 576 F.3d at 356; *United States v. Tockes*, 530 F.3d 628, 633 (7th Cir. 2008). However, even were we to address the argument on its merits, we would conclude that the district court did not abuse its discretion in overruling the objection to the Rule 16 materials. We will assume for the sake of argument that the government's disclosures were inadequate even though the state of the record does not allow us to assess the disclosures. Even if the disclosures were inadequate, Thornton would still be required to establish that any Rule 16 violation hampered his opportunity to prepare a defense or that the violation substantially influenced the jury. *United States v. White*, 582 F.3d 787, 804 (7th Cir. 2009), *cert. denied*, 130 S. Ct. 1542 (2010). *See also United States v. Stevens*, 380 F.3d 1021, 1026 (7th Cir. 2004) (holding that a Rule 16 error will be reversed only for abuse of discretion that is prejudicial to the substantial rights of the defendant). Thornton has not even attempted to establish prejudice from the court's decision to overrule his Rule 16 objections. Thornton has not demonstrated, for example, that he was unduly surprised or lacked an adequate opportunity to prepare a defense. *Stevens*, 380 F.3d at 1026. Moreover, when the government violates Rule 16, the remedy is not necessarily the exclusion of the expert

evidence. *Id*. Instead, the district court may adopt a number of different remedies, including granting a continuance. *Id*. The court offered a continuance at one point in the discussion and Thornton did not accept the court's offer, instead apparently choosing to go forward with the information provided.

We turn finally to Thornton's claim that Agent Baudhuin's testimony violated the Confrontation Clause because he was allowed to testify that the ammunition was manufactured outside of Wisconsin based on materials kept by the ATF for the purposes of prosecution. We review evidentiary rulings implicating the defendant's Sixth Amendment confrontation rights *de novo*. *United States v. Turner*, 591 F.3d 928, 932 (7th Cir. 2010). If any error is found, an otherwise valid conviction should not be set aside if the constitutional error was harmless beyond a reasonable doubt. *Id*. Thornton's main objection is that Agent Baudhuin's testimony was based on written materials kept by the ATF for the purposes of prosecution, not on information generally relied upon by experts in the field.

But Thornton's argument mischaracterizes Agent Baudhuin's testimony regarding the place of manufacture of the ammunition. Agent Baudhuin testified that he determined the place of manufacture by examining the ammunition itself, matching the bullets to the boxes in which they were found, and then determining where the ammunition was manufactured based on the information on the boxes (at least one of which actually listed the place of manufacture), his personal

experience with ammunition, his ATF training, and catalogs of information kept by the ATF. Agent Baudhuin testified that the information kept by the ATF came from the manufacturers of the ammunition. Agent Baudhuin's reliance in part on written materials provided by ammunition manufacturers and kept by the ATF for the purposes of prosecution in no way violates Thornton's Confrontation Clause rights. Although the ATF kept the manufacturers' written materials for the purposes of aiding prosecutions, there was no indication that the manufacturers created this documentation of their products for that same purpose. "Business and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial— they are not testimonial." *Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527, 2539-40 (2009). Moreover, "[w]hen an expert testifies, 'the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted'" if those facts or data are of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject. *United States v. Moon*, 512 F.3d 359, 361 (7th Cir. 2008) (quoting Fed. R. Evid. 703). Manufacturers' materials which identify the place that a product was manufactured fall within this category of facts or data. *United States v. Ware*, 914 F.2d 997, 1003 (7th Cir. 1990) (experts in the field of firearms identification reasonably rely on markings on the weapon, ATF publications and lists,

and firearms trade books, magazines and reference materials in determining the place of manufacture of a particular firearm). *See also United States v. Floyd*, 281 F.3d 1346, 1349 (11th Cir. 2002) (allowing an ATF firearms expert to testify to the place of manufacture of ammunition based on an examination of the ammunition, reference to a manufacturer's catalog, and consultation with an ATF technical adviser); *United States v. Gresham*, 118 F.3d 258, 266-67 (5th Cir. 1997) (affirming the admission of expert opinions on the place of manufacture of bomb components where the opinions were based on discussions with the manufacturers, corporate literature and reference materials maintained by the ATF, studies of distinctive markings on the products, and the experts' personal experience in law enforcement). The court did not err in allowing Agent Baudhuin to testify regarding the place of manufacture of the ammunition found in Thornton's home.

## III.

The district court did not err in limiting the cross-examination of Staci Amato. Nor did the court err in allowing Hannon and Agent Baudhuin to testify as experts, or in permitting Agent Baudhuin to testify, based in part on his review of manufacturers' materials maintained by the ATF, that the ammunition was manufactured in states other than Wisconsin.

AFFIRMED.